May it please the court, hello, my name is Brad Kirkland, I represent Megan Mosteller. My understanding is that Megan is here, there she is in the back, she waved. I haven't been able to talk to her but it's interesting that she's here because of the way that I was invited to be here today. I originally filed an Anders brief in this case and Megan filed a supplemental brief and one of the issues that she raised was the Speedy Trial Act. This court then asked, based on I assume her two issues were whether the district court erred by requiring as a condition of granting a mistrial that the defendant waive her rights under the Speedy Trial Act and if so whether Megan Mosteller is able to assert the violation of her rights for the of the act for the first time on appeal. In order to understand the first issue I think it's necessary to go through the facts a little bit however I have made some notes so that I will be as brief as possible. Megan Mosteller was accused of defrauding the Veterans Administration. There were two trials. The first trial ended in mistrial and there were two separate indictments. The government obtained a superseding indictment after the first mistrial. Today what we're going to be dealing with is the first trial and the first indictment. The first indictment is very important because of how it was worded. The first indictment alleged that Megan defrauded the Veterans Affairs Dependency and Indemnity Compensation Program in the amount of $30,906. That's critical because of the extreme specificity of what it was that she's alleged to have done. At the trial what ended up happening was the prosecution introduced some benefits that were related to educational benefits. Now these educational benefits it turned out were not part of the indemnity benefits or the $30,906. So it took a little while for the defense attorney to realize what was going on. Trial of course is somewhat hazy but nonetheless once the defense attorney figured out what was going on he objected to the educational benefits coming in and he immediately moved for a mistrial because it was prejudicial to his client that she was accused of benefits that were not alleged in the indictment. The government opposed the mistrial. The government was successful in their opposition to the mistrial which then brought up a new issue that the judge had to deal with and this new issue was since I've ruled that the educational benefits are inadmissible, well at that point in time he hadn't ruled that they were inadmissible, but since we had already put those benefits into the record we have to decide what to do with them. Are they going to be inadmissible as intrinsic to the government's case or are they kept out under 403 or some other rule? What he ended up deciding was that the benefits were inadmissible and so they created a new problem that he had to deal with. Because the first witness of the case had already testified for some period of time and several documents had been introduced into the record at the trial, the government made the district court aware that we have a lot of documents in the record already that mention these educational benefits. The judge says, well I'm not going to change my ruling so I'm going to take a break. I'm going to let the attorneys look at these documents. I'm going to let the attorneys decide what we have to do to fix this. So the attorneys took a break. They looked at the documents and it appeared at that point in time that the educational benefits were inextricably intertwined with the indemnity benefits. So when they came back from the break there was much discussion about what to do. The judge finally says, hold on, let me just look at these documents and let's figure out what can be done. And he looks at the documents and if you read the transcript and I have put the facts in my brief, the judge basically says immediately after looking at the documents that I see what the problem is. And he turns to the prosecution and he said, would you be willing to withdraw your objection to this mistrial? And the government says they would under these circumstances. And he turns to the defense attorney and said, would you be willing to renew your motion for a mistrial? And the defense attorney says, yes we would, your honor. And he says, all right, well here's what I'm thinking about. And he actually goes through the reasoning why a mistrial would be appropriate. There's a discussion in which he discusses here's the reasons why I think a mistrial is appropriate. However, he does not grant the mistrial. He identifies then two new issues that he thinks he'll have to deal with if he grants the mistrial. And the two new issues are, number one, does double jeopardy attach? And number two, how are we going to deal with the Speedy Trial Act? The court then on its own motion decides that the double jeopardy does not attach. I think the judge can do this. This is what I wrote about in my Anders brief. He decides double jeopardy doesn't attach. There's the Baromeo case that I mentioned in my brief. And he rules that a second trial would be permissible as double jeopardy did not attach and there was no prosecutorial misconduct. Then he turns to the second issue, the Speedy Trial Issue. This one is much more complicated. For whatever reason, the judge decides to get involved in the Speedy Trial Act. Rather than just ruling on the mistrial and then dealing with these other issues as they come up, he decides to get involved in it. And he basically tells the defendant, and I think that is alleged in the government's version of the facts in their response, agrees that the judge tells her, tells Megan Mosteller, he says, I want to make sure that you understand that if I grant this mistrial, you are going to be tried again on this charge in the future. He does also say there may be a superseding indictment, I don't know, but the trial's going forward. So the only thing that you can hope for if I grant this mistrial is that there will be another trial in your future very soon. Do you understand that? Forces her to stand up and say, yes, I understand that. He then goes on to ask her, in order for me to grant, well, he doesn't say the word, in order for me to grant this mistrial. He just hasn't granted it yet. He says, so do you understand then that you are going to have to, and that is the phrase he used, you are going to have to waive your rights under the Speedy Trial Act. Of course, she stands up and says, yes, sir. And he says, okay then. We've taken care of all these issues. And then he goes on and makes his mistrial. So clearly the indication is, and why I think the court was interested in this issue, is it's a bizarre organization of how this occurred. It appears that what the judge was doing, and it took me a long time to sort this out, I really had to read the transcript over and over and over to figure out factually what had happened. I think I simplified it just then, but it was very confusing when you just read the transcript. But what I think occurred was that the judge was actually engaging in bargaining with the parties. Once he realized that it was virtually impossible to go forward, he asked the prosecution, are you willing to withdraw your objection to the mistrial? Then he goes and asks the defense, are you willing to renew your motion? Then he goes to Megan Mosteller and tells her, here's what we're going to do. If you will waive your rights under the Speedy Trial Act, then I will give you your right to a fair trial. It seemed like there was an exchange occurring in which the government- The federal defendant, the Supreme Court has told us, cannot prospectively waive his Speedy Trial Act. Yes, ma'am. Zedner. We're there. It took us a while, but we're there. Okay. Now that's what happened here. But we have no reversal unless a defendant files a motion to dismiss prior to trial. That's a much more difficult issue. Was a motion to dismiss prior to trial? Absolutely not. Okay. And I walk through my reasoning on this. Since there was no motion made- Remember, you're espousing her best case here. Oh, I am. But unfortunately, there wasn't. And I have a way that I think that it can be done here, but it's difficult. And here's what the problems are that we face. Since no objection was made, it was certainly not preserved. I'm going to argue that Rule 52B of the Rules of Criminal Procedure still allow you to consider this issue for the first time on appeal. The main problem for us, admittedly, is the last sentence of 3162A2. And that reads, Failure of a defendant to move for a dismissal prior to trial or entry of a guilty plea or right to dismiss under this section. So that's the problem that we're dealing with right now. When I started walking through the analysis, I looked at 52B, and there's certainly no restriction written into 52B. However, you do have the Olano case, the Supreme Court case. And the Supreme Court case, when it interpreted 52B, they said that there's two things to consider. Number one, it's only permissible for the court to consider plain error. They don't have to do it. And number two, more importantly, they draw a distinction that I did not know about. I learned about it writing this brief. They drew a distinction between a forfeited error or right and a waiver. And of course, I know that all of you know this, but they wrote in the opinion that the important distinction is that a forfeited right can be reviewed for plain error, whereas a waived right essentially extinguishes the error and cannot be reviewed. So that's what we're And I'm being perfectly honest with you. I wrote it in my brief. The vast majority of the jurisdictions that have published opinions on this have said that it is a waiver and it may not be reviewed. However, I searched hard and I searched long, and I was able to find three cases, United States v. Griffin in the Seventh Circuit in 1999, and this is in my brief, United States v. Schwenzau, S-C-H-W-E-N-S-O-W, which was Seventh Circuit, 1998, and United States v. Carrasco, Ninth Circuit, 2001. And I put all of those in my brief. In those cases, they actually perform a plain error analysis on a speedy trial issue that was not raised in the court below. And what we're asking you to do is to consider those three cases and apply plain error analysis to Megan Mosteller's case. Now, that being said, I have to admit, and it's in my brief, that the Seventh Circuit appears to have reversed their position on this, and they are now saying that if you don't waive it in the court below, it is actually a waiver. And there's two Fourth Circuit cases that give us a bit of a problem, U.S. v. Henry and U.S. v. Cherry as well. Both of those cases seem to indicate that a waiver occurs if you don't raise it in the court below. However, I would try to distinguish those two cases. In U.S. v. Henry, the defendant had moved for a dismissal under the Speedy Trial Act, so it wasn't directly the holding of the case. It was mentioned, in fact, the quote was, to enforce the act, a defendant must move to dismiss the charges before the start of a trial or entry of the guilty plea. But that wasn't necessary for the holding in the case because the defendant had moved for a dismissal in that case. In the U.S. v. Cherry case, the issue was whether the 3162A2 applied to the speedy indictment portion. Admittedly, there is an implication that if it applies to the speedy indictment portion, that it also applies to your speedy trial, right? But that's what I'm dealing with. That's what I have to, that's what I have, those, the district court dealt me these cards and then you guys asked me to play them, and unfortunately the law isn't particularly on our side. Well, the only case you really have left is the Carrasco case from the Ninth Circuit. Yes, ma'am, it is. And lots of circuits disagreeing with you. Yes, ma'am. I list every single one of them in my brief. I went through every circuit. And why doesn't a plain error analysis just simply undermine the statute? That is the reasoning of all of the other circuits. And I'll tell you, quite honestly, I really do, obviously. Megan, she's here today and she feels like a tremendous injustice occurred, and I understand why she thinks that. It may be more of a 2255 issue, not having raised it, but the reality is that even in the Carrasco case, they didn't give any reasoning why they did it. They just jumped straight to a plain error analysis. They didn't discuss that language, that last sentence of the Speedy Trial Act. And so it's hard for me to easily, intellectually give you a great reason to do this, other than I'm not just, as I have in the past, in fact, I appeared in front of Justice Motts a few years ago, and Justice Motts asked me to please give her authority for a position I was taking. And I told her I could not. Today I have some. At least I have Carrasco. And so we would ask you to consider the Carrasco case and consider, I guess another thing, a common sense approach to this might be that, you know, it talks about a defendant intentionally relinquishing a right when they waive it. Well, Megan Mosteller, she had no idea what was going on. Her attorney admittedly may have known what was going on, but she didn't. And she feels like she was railroaded by this whole process because she didn't understand what was going on and she was forced to enter this waiver. And being forced to enter the waiver probably even affected the attorney's ability to spot the issue. That's one of the things that's crazy about it. Since the waiver was made and no one realized that maybe Zedner applies or maybe Worchester that I cited applies, the defense attorney may have even been accused about where they stood legally. And so it is quite a burden on a defendant and even a defense attorney in this situation to realize what's going on so that they can raise the issue. I guess the practice would be to raise it every time before a trial would be a practice you can engage in. But the defense attorney just didn't spot it because of the way that things went down. And based on that, I'd ask you to consider the Carrasco case. And that's unfortunately all that we have. Thank you very much. Thank you, Your Honor. Good morning. I'm Bill Day. I'm the AUSA who's been involved in this case and on the appeal. If I can start where Mr. Kirkland ended, I think I'll address the waiver issue first and then come back to the issue of the bargaining. It looks as if the court is most concerned with that issue. Your Honor, the Carrasco case, I think it's worth noting that although it's an unpublished opinion in USVD Dugan, which is 10 years later, the Ninth Circuit, stated, we have never held that a Speedy Trial Act claim is preserved when no one moved to dismiss prior to trial. And then in USV Morgan, which I believe is the Seventh Circuit case that overruled the Seventh Circuit cases cited by the appellate, it also refers to the Carrasco case. And of course, I know the Seventh Circuit can't overrule the Ninth, but it had some reasoning that it pointed out that in every circuit that has considered, and I believe that applies to this circuit also, Your Honor, in the Cherry case that is considered a 3162A2 violation, in every circuit that's conducted a plain error review, 3162A2 has been overlooked. It's really not talked about in those cases where they do the plain error review. And it also points out that a waiver argument can be waived by the party that it helps, the government. And in those cases where the plain error argument was addressed, it appeared that the government had waived its 3162 waiver argument. In this case, the government is not making any motion prior to trial. The defendant waived their Speedy Trial Act arguments. In the Cherry case, the defendant was trying to avoid 3162A by claiming it only applies to a Speedy Trial Act problem and not an untimely indictment. And the court held no, that section, it's a whole section, and it applies to all of it. 3161E, which is for a mistrial, and says that 3162A2, or 3162 applies to that section. So we would submit that under the statute, the rights have been waived. So you don't get to, and that's why I think the appellant in their point that would be what standard do you apply, whether it's a harmless error, plain error, etc., you don't because it's waived. And that's why you're not going to find the standard. The statute specifically says, and you don't get into the knowledge, the knowing waiver, it's by not doing something. It's an act. You don't look to what the intent of the defendant is. You just look to did they file it in time. And I think importantly, Zedner points out that it is, the Supreme Court points out, it's the defendant has the burden of raising the Speedy Trial Act problem because they're the ones who benefit most about it. That's one of the things they point out. And the second is that they point out is that the statute by requiring that the motion be made before trial, you avoid the expense and time consumed in conducting a trial that is then mooted. And it also prevents, which I'm not accusing the defense of in this case, but it being involved in undue gamesmanship. And it limits the penalty of a dismissal without prejudice by having it done before the trial has taken place. Thank you. Concerning the, and we have agreed that error took place in our brief in the granting of the mistrial. So, but concerning that, I would point out. Not in the granting of the mistrial in requiring this young woman to forfeit her speedy trial rights. Exactly. Yes. Yes, you're exactly right, Your Honor. But I would suggest that it's, it wasn't well done in connecting the two with the court talking, but I don't think the court was really trying to bargain with the defendant on waiving the Speedy Trial Act rights because it doesn't make any difference. And we've conceded, I was just, the court had been told that the parties had agreed that there was going to be a superseding indictment. That was part of the basis that the government was withdrawing its objection to the mistrial. It doesn't make it, at the bottom line, it doesn't matter. I mean, we've agreed that there was error there. I think we understand your argument. Thank you. Sir, do you have any rebuttal? I don't think I have anything else. I do want to make one quick point that I don't think that the malicious by any stretch of the imagination. It doesn't make any difference. I understand, Your Honor, but I just want to put on the record that I think it was just the haze of trial and it ended up in an odd circumstance, but it did result in error. There's no doubt. Thank you, Your Honor. Thank you very much. We'll ask our clerk.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker